# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

LEEANN GALEA,
      Plaintiff,

      v.

LAW OFFICES OF CARY ALAN CLIFF,
et al.,
      Defendants.

No. 3:19-cv-225 (SRU)

## RULING AND ORDER ON MOTION TO DISMISS

      Leeann Galea ("Galea"), proceeding *pro se*, filed this action in February 2019 against

Silver Hill Hospital and numerous other defendants. Galea generally alleges that Silver Hill

wrongfully disclosed confidential medical information without her consent to a private attorney

while she was a patient at the hospital. Silver Hill has moved to dismiss the action for lack of

personal jurisdiction and failure to state a claim. For the following reasons, the motion to dismiss

is **granted** in part.

## I.    Factual Background[1]

      The alleged wrongful disclosure of information in this case occurred nearly eight years

ago, in 2013. On September 19 of that year, Galea, who had recently given birth and faced a

possible custody dispute with the father of her newborn, voluntarily admitted herself to Silver

Hill for mental health treatment. Sec. Am. Compl. Doc. No. 40 at ¶ 2; Compl. Doc. No. 11-1 at

11-13. At some point prior to her admission at Silver Hill, Galea had sought advice from a

---

[1] The facts referenced here are drawn from the Second Amended Complaint and, in some instances, the Amended Complaint. Although an amended complaint replaces rather than supplements an original complaint, a court must liberally construe the pleadings where a plaintiff proceeds *pro se* and may look to relevant factual allegations or exhibits attached to the original complaint in doing so. *See Cooksey v. Global Grind Digital,* 2016 U.S. Dist. LEXIS 127946 at *6 (S.D.N.Y. Sept. 20, 2016), *appeal withdrawn sub nom. Cooksey v. Global Grind Digital,* 2017 U.S. App. LEXIS 22065 (2d Cir. Feb. 22, 2017) (collecting cases).

Florida family-law attorney, Cary Alan Cliff ("Cliff"), about the possible child custody dispute. *Id.* Galea had not, however, formally retained Cliff at the time she sought treatment at Silver Hill. *Id.*

During the intake process and prior to being admitted to Silver Hill's inpatient program, Galea was provided with a copy of the Silver Hill Hospital Patient Handbook, which outlined patient rights and responsibilities. *Id.* at ¶ 15. The handbook specified that during her time as a patient of Silver Hill, "staff will not confirm or deny the presence of any patient without the patient's written consent." *Id.* at ¶ 16. The handbook additionally specified that Silver Hill was a "HIPAA compliant" facility. *Id.* at ¶ 17. Galea signed intake forms assenting to the provisions of the handbook. *Id.* at ¶ 18.

After being admitted as a patient, Galea was started on a regimen of psychotropic medications. *Id.* at ¶ 19. At some point after she had begun the new regimen of medication, Cliff called Silver Hill and requested information regarding whether Galea had been admitted as a patient. *Id.* at ¶ 24; Am. Compl. Doc. No. 11-1 at 13. Galea alleges that Silver Hill employees confirmed to Cliff that she had been admitted as a patient without first obtaining her written consent to share that information. *Id.* at ¶ 26. Cliff then faxed certain documents, including an attorney retainer agreement, to Silver Hill for Galea to sign. *Id.* at ¶¶ 26, 29. Galea states that Silver Hill medical professionals and employees improperly notarized the documents; further, she contends that they released her medical file to Cliff without her consent. *Id.* at ¶¶ 11, 33-38. Cliff then relied on those documents to commence a custody action on her behalf in Florida, during which her medical records and information regarding her mental health were used in a way that prejudiced her in the Florida family court proceedings. *Id.* at ¶¶ 34-37.

## II.   **Procedural History**

Galea filed her original complaint in this action on February 14, 2019. Her motion to proceed *in forma pauperis* was granted on May 17, 2019 but the complaint was not served on Silver Hill. Galea then moved to amend the complaint on June 24, 2019 and subsequently filed an ex parte emergency motion for a preliminary injunction. *See* Doc. No. 12. She additionally filed an amended complaint. *See* Doc. No. 11. The case was then transferred to my docket.

The ex parte motion was served on Silver Hill, but there is no indication from the docket that the original complaint or amended complaint were served at that time or thereafter. *See id.* Silver Hill Hospital, however, filed a notice of appearance on August 5, 2019, and a motion to dismiss on August 14, 2019. I held a brief telephonic motion hearing on August 21, 2019 during which I directed Galea to file a second amended complaint clearly identifying the factual basis for her claims and denied without prejudice the motion to dismiss. *See* Conf. Mem. and Order, Doc. No. 29. Galea filed the Second Amended Complaint, at issue here, on April 10, 2020. *See* Doc. No. 40. On May 27, 2020 Silver Hill moved to dismiss the Second Amended Complaint in its entirety. *See* Doc. No. 43.

### III.   <u>Standard of Review</u>

1.   <u>Rule 12 (b)(5)</u>

Rule 12(b)(5) provides that a party may file a motion to dismiss for insufficient service of process in a pre-answer motion to dismiss. Fed. R. Civ. P. 12(b)(5). "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure." *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 109 (D. Conn. 1999).

Under Rule 4(h), proper service on a corporation may be effected in the manner provided by state law for serving an individual in the state where the district court is located or "by

delivering a copy of the summons and of the complaint to an officer, a managing or general

agent, or any other agent authorized by appointment or by law to receive service of process

and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy

of each to the defendant." Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A)-(B). Rule 4(m) additionally requires

timely service: "[i]f a defendant is not served within 90 days after the complaint is filed, the

court—on motion or on its own after notice to the plaintiff—must dismiss the action without

prejudice against that defendant or order that service be made within a specified time." Fed. R.

Civ. P. 4(m).

When a defendant challenges the validity of service through a motion to dismiss, "it

becomes the plaintiff's burden to prove that service of process was adequate." *Cole*, 70 F. Supp.

2d at 110. A court reviewing a motion to dismiss for insufficient service may look beyond the

four corners of the complaint in order to establish whether the requirements of service have been

satisfied. *Founders Ins. Co. v. Cuz DHS, LLC*, 2017 U.S. Dist. LEXIS 195554 *7 (D. Conn.

Nov. 28, 2017).

2. Rule 12(b)(2)

Under Rule 12(b)(2), a party may challenge a court's personal jurisdiction by filing a

motion to dismiss. Fed. R. Civ. P. 12(b)(2). "When responding to a Rule 12(b)(2) motion to

dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the

court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez &*

*Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). If there has been no discovery on jurisdictional

issues, however, and a court relies solely on the parties' pleadings and affidavits in making the

determination, a plaintiff need only make a *prima facie* showing of jurisdiction. *Id.* For purposes

of determining whether a plaintiff has made that requisite showing, a court must consider the

facts as they existed when the plaintiff filed the complaint. *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991).

Additionally, "[s]ufficiency of service is a precondition for the court's exercise of jurisdiction over a party and, therefore, constitutes an interrelated ground on which to dismiss a case for lack of personal jurisdiction pursuant to Rule 12(b)(2)." *Carliell v. Am. Inv. Exch., LLC*, 2013 U.S. Dist. LEXIS 126437, at *6 (D. Conn. Sept. 5, 2013); *see also Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant.").

3. Rule 8

Federal Rule of Civil Procedure 8 mandates that a pleading must contain "a short and plain statement of the claim establishing entitlement to relief." Fed. R. Civ. P. Rule 8. If a complaint "does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial…or to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Dismissal is not preferred; rather, it is "reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* That is especially true where a plaintiff is proceeding *pro se*. *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) ("The complaint of a *pro se* litigant is to be liberally construed in his favor.").

4. Rule 12(b)(6)

The function of a motion to dismiss brought under Rule 12(b)(6) is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). A court considering a motion to dismiss under Rule 12(b)(6) must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Although specific detail is not required, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). A plaintiff must therefore "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss. *Twombly,* 550 U.S. at 555 (internal quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and…recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

## IV.   <u>Discussion</u>

### 1.   <u>Insufficient Service of Process Under Rule 12(b)(5)</u>

Silver Hill moves for dismissal on the grounds that Galea failed to properly serve the original complaint and summons, and subsequently failed to properly serve the Second Amended Complaint. Def.'s Mem. Doc. No. 43-1 at 4. Galea argues that because she is proceeding *pro se* and *in forma pauperis*, she is entitled to rely on the U.S. Marshals to effectuate service. She notes that she has attempted several times to ensure that the Marshals effectuated proper service on Silver Hill by contacting the courthouse and filing multiple motions for "status of service." *See* Pl.'s Mem. Doc. No. 51 at 2; Doc. Nos. 45, 50. She also attaches as an exhibit to her memorandum the certificate of service establishing that the Second Amended Complaint was served on December 10, 2020. *See* Pl.'s Ex. A.

After a careful review of the docket, I agree that Silver Hill has not been served in accordance with Rule 4(m) with the original complaint, amended complaint or Second Amended Complaint. Although it appears that Silver Hill was served with the Second Amended Complaint on December 10, 2020 it is unclear whether the summons was served at that time. *See* Doc. No. 47. Accordingly, Silver Hill has established that service was deficient.

My determination that service was deficient, however, does not automatically entitle Silver Hill to dismissal. Rule 4(m) provides that if a "plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Courts have been especially willing to find that good cause exists where a plaintiff proceeds *pro se* and *in forma pauperis* and is therefore entitled to rely on the U.S. Marshals to effect service. *See Romandette v. Weetabix Co.,* 807 F.2d 309, 311 (2d Cir. 1986); *see also Walker v. Schult,* 717 F.3d 119, 123 n.6 (2d Cir. 2013) ("The failure of the U.S. Marshals Service to properly effect service of process constitutes good cause for failure to effect timely service, within the meaning of Federal Rule of Civil Procedure 4(m).").

Moreover, the Second Circuit has repeatedly held that "Rule 4 of the Federal Rules is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice…incomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained." *Id.* at 311 (internal quotation marks omitted); *see also Jaiyeola v. Carrier Corp.,* 73 F. App'x 492, 494 (2d Cir. 2003) (vacating dismissal where it was clear that defendant had actual notice and service was ultimately perfected).

In the case at bar, Galea is proceeding *pro se* and *in forma pauperis* and was therefore entitled to rely on the Court and the U.S. Marshals to effect service. It does not appear that the failure to effect service was the result of error or lack of diligence on Galea's part. Moreover, Silver Hill clearly had notice of the action by July 2019, well in advance of the filing of the Second Amended Complaint. *See* Doc. No. 18. Most importantly, proper service of the Second Amended Complaint can still be obtained. *See* Doc. No. 52. Based on my determination that good cause supports an extension for the deadline for effecting service, I entered an order directing Silver Hill to indicate whether it would consent to accept service of the Second Amended Complaint by mail. *See* Doc. No. 52. After Silver Hill advised that it would consent to accept service to its attorney by mail, a copy of the summons and Second Amended Complaint were sent to Silver Hill. Accordingly, the motion to dismiss for insufficient service of process is **denied** as moot.

2.   Lack of Personal Jurisdiction Under Rule 12(b)(2)

Silver Hill additionally moves for dismissal on the grounds that Galea has failed to comply with the requirements of Connecticut General Statutes § 52-190a, which sets forth particular requirements for pleading a claim of medical malpractice.

Section 52-190a provides in relevant part:

> No civil action…shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action…has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant…[t]o show the existence of such good faith, the claimant or the claimant's attorney…shall obtain a written and signed opinion of a similar health care provider.

Conn. Gen. Stat. § 52-190a.

The Connecticut Supreme Court has held that the purpose of the "good faith requirement" provided by section 52-190a is to "prevent the filing of frivolous medical malpractice actions." *Morgan v. Hartford Hosp.,* 301 Conn. 388, 398 (2011). The requirement has been interpreted strictly—failure to attach the requisite opinion letter deprives a court of personal jurisdiction over a defendant because such a failure "constitutes insufficient process, and, thus, service of that insufficient process does not subject the defendant to the jurisdiction of the court." *Id.* at 401. Accordingly, a motion to dismiss for lack of personal jurisdiction is the appropriate vehicle to challenge a plaintiff's failure to comply with the requirement.[2] *Gallinari v. Kloth*, 148 F. Supp. 3d 202, 207 (D. Conn. 2015).

To determine whether a claim alleges medical malpractice and therefore must comply with the requirements of section 52-190a, Connecticut courts have looked beyond a party's classification of causes of action and have focused instead on the substance of the allegations. *Votre v. Cty. Obstetrics & Gynecology Grp., P.C.*, 113 Conn. App. 569, 576 (2009) ("in determining the nature of a pleading filed by a party, we are not bound by the label affixed to

---

[2] I note that there is some dispute regarding whether section 52-190a applies to actions filed in federal court. *See, e.g., Schachter v. Sunrise Senior Living Mgmt., Inc.,* 2019 U.S. Dist. LEXIS 33714, at *7 (D. Conn. Mar. 4, 2019) (noting split among federal courts with regard to whether, for purposes of the *Erie* doctrine, state law certificates-of-merit are substantive rules that must be applied in federal court or instead merely procedural rules). Because I conclude that the statute does not apply to Galea's claims, I do not consider the issue here.

that pleading by the party"). In assessing whether a complaint sounds in medical malpractice, a

court must consider whether:

> (1) the defendants are sued in their capacities as medical professionals;
> (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship; and
> (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment.

*Gold v. Greenwich Hosp. Ass'n*, 262 Conn. 248, 254 (2002).

Silver Hill contends that Galea raises claims of medical malpractice because she alleges

that Silver Hill violated the applicable standard of medical care owed to her as a patient. Def.'s

Mem. Doc. No. 43-1 at 11. Silver Hill additionally highlights the portion of Galea's complaint

where she refers to the mind-altering effects of the psychiatric medications she was prescribed,

characterizing her claims as allegations of improper psychiatric treatment. Def.'s Mem. Doc. No.

43-1 at 7. Although Silver Hill is correct that Galea repeatedly uses the phrase "medical

malpractice" in describing her claims, that fact is not dispositive; the focus of the inquiry

regarding section 52-190a is instead the substance of the allegations.

With regard to the first prong of the test, I agree that Silver Hill is being sued in its

capacity as a medical provider. It is undisputed that the alleged improper disclosures occurred

while Galea was a patient at Silver Hill and was actively receiving treatment.

The alleged error, however, "is not one involving professional medical judgment or skill"

or negligence of a specialized medical nature. *Doe v. Cochran*, 332 Conn. 325, 336 (2019).

Rather, Galea contends that Silver Hill employees should not have disclosed her medical records

to Cliff and should not have pressured her to sign and notarize documents securing his

representation in her family-court case. In making that claim, Galea cites to the Health Insurance

Portability and Accountability Act ("HIPAA") and parallel provisions of Connecticut law to

support the contention that Silver Hill's actions did not comply with the applicable standard of care. Those references to laws governing patient confidentiality as the applicable standard of care support the conclusion that the alleged negligence does not involve specialized medical knowledge or skill; statutes governing the confidentiality of medical records are applicable to a variety of institutions that are not medical providers.[3] Instead, the decision to disclose or not disclose records is best categorized as "legal in nature." *Grace v. Morgan*, 2011 Conn. Super. LEXIS 2113, at *5 (Super. Ct. Aug. 4, 2011).

Although Galea does state that she was under psychotropic medications at the time of Silver Hill's alleged wrongful conduct, she does not argue that those medications were improperly prescribed. Sec. Am. Compl. Doc. No. 40 at ¶ 13. She instead suggests that she did not have capacity to contract at the time she signed documents that had been faxed to Silver Hill. *Id.* That allegation does not sound in medical malpractice, but instead is more akin to a claim of simple negligence. *See, e.g.*, *Badrigian v. Elmcrest Psychiatric Inst., Inc.*, 6 Conn. App. 383, 387 (1986) ("one need not be guided by medical experts in determining whether a mentally ill person should be allowed to cross on foot a heavily traveled four lane state highway without supervision"). The choice to assist Galea in signing and notarizing documents is additionally unrelated to a decision regarding diagnosis or treatment.

Because Galea's claims are not, at their core, claims of medical malpractice, Galea was not required to comply with the requirements of section 52-190a. Accordingly, the motion to dismiss for lack of personal jurisdiction for failure to comply with that statute is **denied**.

      3.   <u>Failure to Comply with Rule 8</u>

---

[3] *See* U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, "Who must comply with HIPAA privacy standards?", available at https://www.hhs.gov/hipaa/for-professionals/faq/190/who-must-comply-with-hipaa-privacy-standards/index.html.

Silver Hill moves for dismissal for failure to comply with Rule 8, arguing that the allegations in the Second Amended Complaint are "so confusing and vague as to render the complaint unintelligible as to its claims." Def.'s Mem. Doc. No. 43-1 at 17.

The Second Circuit has "repeatedly emphasized that Rule 8 reflects liberal pleading standards, simply requiring plaintiffs to disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Riles v. Semple*, 763 F. App'x 32, 34 (2d Cir. 2019) (internal quotation marks and citations omitted). Moreover, when considering a motion to dismiss the claims of a plaintiff proceeding *pro se*, a court must "construe the pleadings liberally." *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). "Where such a complaint substantially complies with Rule 8, dismissal is improper." *Riles*, 763 F. App'x at 33.

In light of the fact that Galea is proceeding *pro se* and given the preference in this Circuit for adjudicating claims on the merits, I will not dismiss the Second Amended Complaint for failure to comply with Rule 8. Though not a model of clarity, Galea sets forth sufficient facts to support her legal claims in the Second Amended Complaint, and therefore provides Silver Hill with adequate notice of the substance of the allegations of misconduct. Accordingly, the motion to dismiss for failure to comply with Rule 8 is **denied**.

4. Failure to State a Claim Under Rule 12(b)(6)

A. Statute of Limitations

Silver Hill additionally moves for dismissal on the grounds that Galea's claims are untimely. Although the statute of limitations is an affirmative defense that usually may not be raised in a pre-answer motion, if "the running of the statute is apparent from the face of the complaint," the defense may properly be raised under Rule 12(b)(6). *Collin v. Securi Int'l*, 322

F. Supp. 2d 170, 172 (D. Conn. 2004); *see also Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989). Here, there is no dispute that the alleged misconduct occurred in 2013 and that the complaint was not filed until 2019. Accordingly, the defense is properly raised in Silver Hill's motion to dismiss.

       i.    <u>Section 52-584</u>

Silver Hill moves for dismissal of Galea's claims as barred by Connecticut General Statutes § 52-584, which provides the relevant statute of limitations for claims sounding in negligence or medical malpractice. Conn. Gen. Stat. § 52-584. In arguing that Galea's claims should be dismissed under section 52-584, Silver Hill contends that the Second Amended Complaint raises a single claim of negligence or medical malpractice and does not sufficiently identify a claim for breach of contract. Def.'s Mem. Doc. No. 43-1 at 11. Silver Hill additionally notes, however, that Galea's claim could be construed as a claim for breach of patient confidentiality. *Id.* at 15.

Galea's *pro se* complaint is not clearly structured, and I agree with Silver Hill that she does not identify with specificity what legal theory she relies upon. In my view, based on the facts alleged and the legal theories referenced, a fair reading of Galea's complaint establishes that she raises two general claims: a claim for breach of the duty of confidentiality imposed upon a healthcare provider, and breach of contract for violating the provisions of the confidentiality agreement she signed prior to being admitted as a patient at Silver Hill.[4]

---

[4] Although Galea also uses the phrase "negligent misrepresentation" and "negligent infliction of emotional distress" once in the complaint, she does not refer to those claims again or plead any facts in support of them. Accordingly, it is not clear that she seeks to recover under either theory. Similarly, although she cites to a violation of the Patient Bill of Rights, she also sets forth no facts or additional details in support of that claim. It is therefore not clear whether she intends to raise a separate claim under that statute, which protects the rights of psychiatric patients. *See* Conn. Gen. Stat. § 17a-540 et. seq. Because the defendants do not specifically address the substance of those claims other than noting that Galea makes reference to them, I do not address them here. Moreover, to the extent that Galea seeks to raise a claim for violations of HIPAA and Connecticut General Statute § 52-146o (which creates an evidentiary privilege for information and records obtained in the course of a physician-patient relationship), neither

In *Byrne v. Avery Ctr. for Obstetrics & Gynecology, P.C.,* 327 Conn. 540, 572 (2018), reviewing the superior court's dismissal of a claim of negligence and negligent infliction of emotional distress, the Connecticut Supreme Court recognized a new common-law cause of action for breach of the duty of confidentiality by a healthcare provider. "A duty of confidentiality arises from the physician-patient relationship and…unauthorized disclosure of confidential information obtained in the course of that relationship for the purpose of treatment gives rise to a cause of action sounding in tort against the health care provider." *Id.* Here, the substance of Galea's allegations is that by disclosing her medical records without authorization, Silver Hill violated a duty of confidentiality owed to her as a patient. Sec. Am. Compl. Doc. No. 40 at ¶¶ 13, 41, 45. Accordingly, she appears to assert a common-law claim for breach of the duty of confidentiality.[5]

Moreover, the Second Amended Complaint makes specific reference to Silver Hill's patient handbook and confidentiality agreement and alleges that disclosure of Galea's patient information and records was a violation of that agreement. By citing to a specific confidentiality agreement and setting forth factual allegations in support of her claim that the agreement was breached, Galea has raised an identifiable claim for breach of contract.

a. Negligence/Breach of the Duty of Confidentiality

Connecticut General Statutes § 52-584 provides, in relevant part:

---

statute provides a private right of action. *See Meadows v. United Servs.,* 963 F.3d 240, 242 (2d Cir. 2020) ("[W]e hold that there is no private right of action under HIPAA, express or implied."); *Byrne,* 327 Conn. at 553 ("§ 52-146o…does not explicitly provide a cause of action"). However, the Connecticut Supreme Court noted in *Byrne* that both statutes may be relevant in establishing the applicable standard of care for a common-law claim for breach of patient confidentiality. *See id.* at 568-72 (considering both HIPAA and section 52-146o in determining whether defendant had breached the duty of confidentiality and whether the breach was otherwise authorized by law).

[5] The *Byrne* court construed the duty of confidentiality as a "new cause of action" but recognized it in the context of reviewing dismissal of a claim for negligence and negligent infliction of emotional distress. *Id.* Accordingly, it is not entirely clear whether the claim is best understood as a basis for establishing the applicable duty of care under a theory of negligence, or a separate action altogether. Because I determine that the claim is time-barred under either theory, I do not address the issue in detail here.

[n]o action to recover damages for injury to the person, or to real or personal property, caused by negligence…or by malpractice of a physician…shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of.

Silver Hill argues that Galea's claims, which were filed over five years after the alleged misconduct occurred, are untimely under both the two- and three-year provisions of section 52-584. Def.'s Mem. Doc. No. 43-1 at 11. Interpreting section 52-584, Connecticut courts have drawn a clear distinction between those two periods; the two-year period, or "discovery portion…requires a plaintiff to bring an action within two years from the date when the injury is first sustained *or discovered* or in the exercise of reasonable care should have been discovered." *Rosato v. Mascardo*, 82 Conn. App. 396, 401 (2004) (emphasis in original). The three-year period, however, "specifies the time beyond which an action under § 52-584 is absolutely barred, and the three year period is, therefore, a statute of repose." *Id.* at 402. Accordingly, any action sounding in medical malpractice or negligence must be brought within three years of the occurrence of the alleged wrongful conduct.

The contours of the recently-recognized cause of action for breach of doctor-patient confidentiality are still in flux, and it is therefore unclear whether such an action is governed by section 52-584 (applicable to negligence claims) or section 52-577 (applicable to all other tort claims).[6] *See, e.g., Calvin Haughton v. CVS Pharmacy*, 2020 Conn. Super. LEXIS 1626, at *5 (Super. Ct. Aug. 7, 2020) ("While it is somewhat unclear whether… a cause of action for breach of a healthcare provider's duty of confidentiality is also governed by § 52-584, it still must be brought within three years because this claim sounds in tort."). To the extent that a claim for

---

[6] Section 52-577 provides: "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577. "The three-year limitation of § 52-577 is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of § 52-577 and enumerated in § 52-584 or another section." *Collens v. New Canaan Water Co.*, 155 Conn. 477, 491 (1967).

breach of confidentiality is governed by section 52-584, "the limitation period…does not begin to run until a plaintiff has knowledge or in the exercise of reasonable care should have had knowledge of sufficient facts to bring a cause of action against a defendant." *Tarnowsky v. Socci*, 271 Conn. 284, 291 (2004) (internal citations omitted). Knowledge of sufficient facts has been interpreted to include knowledge of the identity of the defendant who committed the misconduct. "The two year statute of limitations set forth in § 52-584 does not begin to run until a plaintiff knows, or reasonably should have known, the identity of the tortfeasor." *Id.* at 297. As discussed above, however, all actions subject to section 52-584 still must be brought within the statute's three-year period of repose. *See id.* ("We emphasize that a plaintiffs ignorance of the identity of a tortfeasor will not excuse the plaintiffs failure to bring a negligence action within three years of the date of the act or omission complained of."); *see also Rosato*, 82 Conn. App. at 402.

Here, there is no dispute that the alleged improper disclosure of medical records occurred on September 19, 2013. *See* Sec. Am. Compl. Doc. No. 40 at ¶ 45. In her memorandum opposing dismissal, however, Galea argues that the statute of limitations did not begin to run until January 19, 2018. *See* Pl.'s Mem. Doc. No. 51 at 4. In support of that claim, she states that not until litigation over the child custody dispute in Florida commenced did she become aware of "injuries and damages done on the actual date the HIPAA Violations took place." *Id.* She additionally indicates that she was unable to discover the identity of the individual who disclosed the records in the requisite timeframe. *Id.* at 5. Even if Galea can establish that she was unable to discover the alleged wrongful conduct or specific identity of each individual tortfeasor until 2018, however, she was still required to bring her claims within the three-year statute of repose provided by section 52-584. Because she brought her claims well outside that period, the claims are time-barred.

16

Galea additionally cites to a case discussing the applicability of the "continuing course of treatment" doctrine to toll the three-year statute of repose under section 52-584, appearing to argue that the doctrine is applicable here. *Id.* at 6. That doctrine, and the related continuing course of conduct doctrine, permit tolling of the period of repose in circumstances where "it may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of action to terminate before allowing the repose section of the statute of limitations to run." *Rosato*, 82 Conn. App. at 403.

Here, Galea sets forth no facts to suggest that either the continuing course of treatment or continuing course of conduct doctrine would be applicable based on the relationship between the parties. "[T]o establish the elements of the continuing course of treatment doctrine, a plaintiff is required to prove: (1) that he or she had an identified medical condition that required ongoing treatment or monitoring; (2) that the defendant provided ongoing  treatment or monitoring of that medical condition after the allegedly negligent conduct, or that the plaintiff reasonably could have anticipated that the defendant would do so; and (3) that the plaintiff brought the action within the appropriate statutory  period after the date that treatment terminated." *Cefaratti v. Aranow*, 321 Conn. 637, 646-47 (2016) (internal quotation marks omitted). Here, Galea's claims center on Silver Hill's actions on one day in 2013; nowhere does she suggest that the relationship, much less mental health treatment, continued.

Similarly, in order to establish that tolling under that doctrine is warranted under the continuing course of conduct doctrine, a plaintiff must set forth "evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto." *Watts v. Chittenden*, 301 Conn. 575, 585 (2011). "That duty must not have terminated prior to

17

commencement of the period allowed for bringing an action for such a wrong." *Id.* Galea does

not allege that the relationship with Silver Hill continued beyond her treatment in 2013, nor has

she alleged later wrongful conduct by Silver Hill related to the original improper disclosure.[7]

Because she sets forth no facts to support tolling of the three-year statute of repose under either

the continuing course of conduct or treatment doctrines, the claims are untimely.

Moreover, although Galea contends that she could not have discovered the alleged

wrongful disclosure prior to 2018 when litigation began in the family-court proceedings, she

states in the Second Amended Complaint that on "Monday September 23, 2013, said

contract(s)/document(s) were E-Filed…in Collier County Twentieth Judicial Circuit Court." Sec.

Am. Compl. Doc. No. 40 at ¶ 34. She therefore has not adequately alleged that she was unable to

discover the alleged wrongful disclosure prior to 2018. *See, e.g., Lagassey v. State*, 268 Conn.

723, 749 (2004) ("actionable harm may occur when the plaintiff has knowledge of facts that

would put a reasonable person on notice of the nature and extent of an injury, and that the injury

was caused by the negligent conduct of another…the harm complained of need not have reached

its fullest manifestation in order for the limitation period to begin to run"). Even if she were to

establish that the continuing course of treatment or conduct doctrine are applicable, "both tolling

doctrines apply only to the repose portion of the statute …[o]nce the plaintiff has discovered her

injury, the statute begins to run." *Rosato,* 82 Conn. App. at 405.

In order to establish that her claims are timely, Galea would need to establish both that

she was unable to discover the alleged misconduct prior to 2018 *and* that the statute of repose

should be tolled. Because she has failed to allege either that she could not discover the wrongful

---

[7] Although Galea appears to contend in her original complaint that Silver Hill refused to provide her with a full copy of her patient file when she requested it, that statement appears to state a separate claim from the claim that her file was improperly disclosed in 2013.

disclosure within two years of 2013 or that the continuing course of conduct or treatment doctrines are applicable to toll the statute of repose, the claims sounding in negligence and breach of confidentiality are time-barred.[8] Accordingly, the motion to dismiss is granted with respect to Galea's tort claims.

      b.  Breach of Contract

Under Connecticut law, "[n]o action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues." Conn. Gen. Stat. § 52-576. For actions alleging breach of contract, "the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted." *Bouchard v. State Emples. Ret. Comm'n*, 328 Conn. 345, 368 (2018). Because Galea's claim for breach of contract is governed by section 52-576, the motion to dismiss Galea's breach of contract claim as barred by section 52-584 is denied.

      B.  Sufficiency of Allegations

Silver Hill additionally appears to argue that Galea has failed to state a cognizable claim for breach of contract, arguing that she has failed to specify what contract existed between the parties or how Silver Hill breached the terms of that contract.[9] Def.'s Mem. Doc. No. 43-1 at 11. Accordingly, Silver Hill contends that Galea has not stated a claim for breach of contract. I disagree.

The elements of a breach of contract claim under Connecticut law are "formation of an agreement, performance by one party, breach of the agreement by the other party, and damages."

---

[8] I note that if claims for breach of the duty of confidentiality are instead governed by section 52-577, Galea's claims would still be time-barred; that statute is an "occurrence statute" and any action subject to its provisions must be brought within three years from the time the alleged wrongful conduct of the defendant occurs. *Watts*, 301 Conn. at 583.

[9] Silver Hill additionally argues that Galea has failed to state a claim for medical malpractice and breach of the duty of confidentiality. Because I conclude that those claims are time-barred, I do not address that argument here.

*Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014). Determining whether an action sounds in contract or tort requires careful consideration of the allegations of the complaint and the factual context of the allegations. "An action in contract is for the breach of a duty arising out of a contract…whereas an action in tort is for a breach of duty imposed by law." *Id.* (internal quotation marks and citation omitted).

Connecticut courts have recognized claims for breach of contract arising out of improper disclosure of medical records where a plaintiff establishes that some sort of confidentiality agreement existed with regard to the records at issue.[10] *See Meade v. Orthopedic Assocs. of Windham Cty.*, 2007 Conn. Super. LEXIS 3424, at *28 (Super. Ct. Dec. 27, 2007) ("The plaintiff alleges that Day Kimball breached its contract with the plaintiff by violating its own institutional policies and procedures as reflected in the hospital's use of an authorization, and public law and policy as reflected in HIPAA. As such, the plaintiff has sufficiently pled a cause of action for breach of contract."); *Corniello v. Fuzion Med. Aesthetic Boutique, LLC*, 2015 Conn. Super. LEXIS 2264, at *27 (Super. Ct. Aug. 26, 2015) ("[the defendant's] due care in this case was to protect the confidential files of its patients from the harm of disclosure. Accordingly, the plaintiff has sufficiently pleaded a breach of contract claim"); *Doe v. Danbury Hosp.*, 2021 Conn. Super. LEXIS 8, at *11-12 (Super. Ct. Jan. 12, 2021) (allegations that plaintiff "entered into a contract for health related goods and services with Danbury Hospital and/or WCHN…and in exchange Danbury Hospital and/or WCHN agreed to take all reasonable measures under the law to maintain the confidentiality, privacy, security and integrity of Jane Doe's sensitive health information in accordance with the law" sufficient to allege breach of contract claim).

---

[10] There is no indication that the decision of the *Byrne* court to recognize a cause of action in tort foreclosed a breach of contract claim for improper disclosure of medical records; although the plaintiff had raised a breach of contract claim in Superior Court, that claim was not at issue on appeal. *See Byrne v. Avery Ctr. for Obstetrics & Gynecology, P.C.*, 2011 Conn. Super. LEXIS 6112, at *43 (Super. Ct. Apr. 7, 2011); *Byrne,* 327 Conn. at 547.

Here, Galea states that prior to being provided medical services from Silver Hill as a patient, she was provided with intake forms that contained language to the effect that Silver Hill would not "confirm or deny the presence of any patient without the patient's written consent." Sec. Am. Compl. Doc. No. 40 at ¶ 16. She alleges that despite that promise, her identity, status as a patient and medical records were released without her consent. *Id.* at ¶¶ 33-34. She additionally contends that the release of the confidential records compromised her ability to litigate the child custody dispute in Florida. *Id.* at ¶ 38. At this stage of the proceedings, those allegations are sufficient to state a claim for breach of contract.

**V.      Conclusion**

For the foregoing reasons, the motion to dismiss the Second Amended Complaint [doc. no. 43] for lack of personal jurisdiction and insufficient service of process is **denied.**  The motion is **granted** with respect to claims for negligence and breach of the common-law duty of confidentiality. The motion is **denied** with respect to the claim for breach of contract.

So ordered.

Dated at Bridgeport, Connecticut, this 22nd day of March 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge