**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LEEANN GALEA,<br>            Plaintiff, | No. 3:19-cv-225 (SRU) |
| v. | |
| LAW OFFICES<br>OF CARY ALAN CLIFF, et al.,<br>            Defendants. | |

**RULING ON MOTION TO DISMISS**

In 2019, Leeann Galea ("Galea"), proceeding *pro se*, filed suit against Silver Hill Hospital ("Silver Hill") and certain of its employees, principally alleging that hospital staff had disclosed confidential information about her medical history without her consent. In 2021, I granted in part a motion to dismiss filed by Silver Hill, ruling that although certain of Galea's claims were time-barred by the relevant statutes of limitation, she had stated a timely and cognizable claim for breach of contract against the hospital. Current and former Silver Hill employees Sigurd H. Ackerman, MD, Michelle Robinson, Ellen S. Alliger, Elizabeth Moore, and Celeste J. McGeehan ("the individual defendants") subsequently filed this separate motion to dismiss claims raised against them, arguing that subject matter jurisdiction over the action is lacking, that certain of Galea's claims are time-barred, and that she has failed to set forth a plausible breach of contract claim against any individual employee of the hospital. For the following reasons, the motion to dismiss is **granted** with respect to the claims raised against Ackerman, Robinson, and McGeehan; and defendants Moore and Alliger are **dismissed** from the action pursuant to Federal Rule of Civil Procedure 21.

## I.    Factual Background[1]

---

[1] The factual allegations set forth in the Second Amended Complaint are discussed in more depth in my prior order

On September 19, 2013, Galea voluntarily admitted herself to Silver Hill for inpatient mental health treatment. Second Amended Complaint ("SAC") at ¶¶ 2, 14. Galea had recently given birth, and faced a potential custody dispute with the father of her newborn, who was at that time living in Florida. *See generally* Am. Compl. Doc. No. 55.[2] During the patient intake process, Galea was given a copy of the Silver Hill Patient Handbook, which provided, in relevant part, "[t]o protect your confidentiality, Silver Hill Hospital staff will not confirm or deny the presence of any patient without the patient's written consent." SAC at ¶¶ 15-16. Galea read the handbook, and signed a form averring that she understood its provisions. *Id.* at ¶¶ 15, 18.

Galea remained inpatient at Silver Hill between September 19 and September 25. *Id.* at ¶ 2. During the course of her stay, she received care, treatment, or assistance from various hospital employees, including: "Sigurd H. Ackerman, MD, President & Medical Director, Michelle Robinson, Executive Assistant to Sigurd H. Ackerman, Elizabeth Moore (McNeil), Chief Operating Officer, Ellen Alliger, LMSW, Director[,] Health Information Services[,] and Celeste McGeehan[,] LMSW[,] Supervisor[,] Health Information Management/Medical Records." *Id.* at ¶ 7.

Immediately following her admission to Silver Hill, Galea was placed on a regimen of psychotropic medications by Silver Hill staff, presumably to address her mental health conditions. *Id.* at ¶ 19. At some point between the date of her admission on September 19 and the afternoon of the following day, September 20, a family law attorney in Florida, whom Galea had

---

addressed to Silver Hill's motion to dismiss, and I reference them here only as relevant to the instant motion.
[2] As I did in my order addressed to Silver Hill's motion to dismiss, I draw on the facts set forth in the Amended Complaint as well as Second Amended Complaint in order to liberally construe Galea's *pro se* pleadings. *See, e.g., Cooksey v. Global Grind Digital*, 2016 U.S. Dist. LEXIS 127946 at *6 (S.D.N.Y. Sept. 20, 2016), *appeal withdrawn sub nom. Cooksey v. Global Grind Digital*, 2017 U.S. App. LEXIS 22065 (2d Cir. Feb. 22, 2017) (collecting cases).

briefly consulted regarding the custody dispute, contacted Silver Hill in an attempt to speak with Galea. *Id.* at ¶ 24; *see also* Am. Compl. Without obtaining Galea's permission to share her medical information, Silver Hill staff members confirmed to the attorney that Galea had been admitted as a patient. *Id.* at ¶¶ 25-26, XIV.

Shortly thereafter, a number of documents, including an attorney retainer agreement, were faxed to Silver Hill, addressed to the attention of "Celeste." *Id.* at ¶¶ 26-29. Galea was instructed to sign the documents, which were notarized by Robinson, a licensed Notary Public. *Id.* at ¶¶ 28-31; *see also* Am. Compl. Those signed, notarized documents, along with a copy of Galea's medical file, were sent via fax to the Florida attorney. *Id.* at ¶¶ 32-33, XIV (b); *see also* Am. Compl. Information included in Galea's medical records, chiefly relating to her mental health history, was subsequently disclosed during family court proceedings in Florida in a way that prejudiced Galea. *Id.* at ¶¶ 34, 37-39.

## II.   Procedural History

Galea filed suit in this action on February 14, 2019. *See* Appx. to Compl., Doc. 1-1. Although her motion to proceed *in forma pauperis* was granted on May 17, 2019, *see* Doc. No. 8, the complaint was not served on the defendants at that time. On June 24, 2019, Galea filed a motion to amend her pleadings, and subsequently filed an ex parte emergency motion for a preliminary injunction. *See* Doc. Nos. 11, 12. She additionally filed a proposed amended complaint. *See* Doc. No. 11-1. Thereafter, the case was transferred to my docket. *See* Doc. No. 13.

Although Galea's ex parte motion was served on Silver Hill, there is no indication from the docket that the original complaint or amended complaint were served on any of the defendants. *See* Doc. No. 16. Silver Hill filed a notice of appearance on August 5, 2019,

however, and a motion to dismiss on August 14, 2019. *See* Doc. Nos. 21, 22, 25. I held a brief telephonic motion hearing on August 21, 2019, during which I granted Galea's motion to amend her complaint and directed Galea to file a second amended complaint clearly identifying the factual basis for her claims. *See* Conf. Mem. and Order, Doc. No. 29. I additionally denied without prejudice the motion to dismiss. *Id.*

On April 10, 2020, Galea filed the Second Amended Complaint, which became the operative pleading. *See* Doc. No. 40. Silver Hill subsequently moved to dismiss the Second Amended Complaint in its entirety, a motion I granted in part on March 22, 2021. *See* Doc. No. 43, Doc. No. 56. In particular, I held that certain of Galea's claims against Silver Hill were untimely under either Connecticut General Statutes § 52-584 or § 52-577. *See* Doc. No. 56. I denied the motion to dismiss Galea's breach of contract claim, determining that it was both timely and that Galea had pleaded sufficient facts in support of that claim to withstand a motion to dismiss. *Id.*

After the Second Amended Complaint was served on the individual defendants, I held a status conference on the record with the parties to clarify certain of Galea's claims and set a scheduling order for moving the case forward. *See* Doc. No. 91. At the conference, I asked Galea to clarify whether she had intended to raise claims solely against the hospital, or whether she had additionally intended to raise claims against the individual employees, given that it was not entirely clear from the allegations set forth in her pleadings. After Galea explained that she had indeed intended to raise claims against the individual defendants, I afforded her an opportunity to file a Third Amended Complaint more clearly identifying the nature of those claims. *Id.* Galea declined the invitation to file such a complaint, and the individual defendants subsequently filed

the instant motion to dismiss directed toward claims raised in the Second Amended Complaint.

*See* Doc. No. 97.

## III.    Standard of Review

### A.    <u>Rule 12(b)(1)</u>

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack

of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional

power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When

jurisdiction is challenged, the party "who seeks the exercise of jurisdiction in his favor" bears the

burden of demonstrating its propriety. *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir.

1994) (cleaned up). A Rule 12(b)(1) challenge to subject matter jurisdiction may be either facial

("based solely on the allegations of the complaint or the complaint and exhibits attached to it") or

fact-based (supported by evidence outside the pleadings). *Carter v. HealthPort Techs., LLC*, 822

F.3d 47, 56-57 (2d Cir. 2016). A court considering a facial challenge to jurisdiction must accept

all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, who

bears no evidentiary burden. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d

Cir. 2011). By contrast, if evidence submitted by a defendant in support of a fact-based challenge

to jurisdiction "'reveal[s] the existence of factual problems' in the assertion of jurisdiction," a

plaintiff cannot rest solely on allegations in the complaint but must instead come forward with

evidence of her own to controvert that proffered by the defendant. *Carter*, 822 F.3d 47 at 57

(quoting *Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d

Cir. 1976)) (cleaned up). If the extrinsic evidence is both "material and controverted," a district

court must make "findings of fact in aid of its decision" regarding subject matter jurisdiction. *Id.*

### B.    <u>Rule 12(b)(6)</u>

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

A court deciding a motion to dismiss under Rule 12(b)(6) must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

As the Supreme Court explained in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (cleaned up). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (cleaned up).

## IV.   Discussion

In the case at bar, the individual defendants contend that subject matter jurisdiction is lacking because Alliger and Moore, like Galea, are both domiciled in New York, and therefore the parties are not completely diverse. In addition, the defendants move for dismissal on the basis

6

that the claims sounding in tort are barred by the relevant statutes of limitation. Finally, they

argue that Galea has failed to identify the existence of any sort of agreement between herself and

any of the individual defendants, and therefore has failed to plausibly allege a claim for breach of

contract.

A.      **Subject Matter Jurisdiction**

Absent subject matter jurisdiction, a court has no power or authority to adjudicate a

particular claim or cause of action, *see Mansfield, Coldwater & Lake Michigan Ry. v. Swan*, 111

U.S. 379 (1884), and I therefore address the propriety of jurisdiction prior to considering the

other arguments set forth in support of dismissal. *Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir.

2008).

"Federal courts are courts of limited jurisdiction" and "possess only that power

authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.

S. 375, 377 (1994). "In 28 U.S.C. §§1331 and 1332(a), Congress granted federal courts

jurisdiction over two general types of cases: cases that arise under federal law, §1331, and cases

in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among

the parties, §1332(a)." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019)

(cleaned up). Each of those "jurisdictional grants…serves a distinct purpose: Federal-question

jurisdiction affords parties a federal forum in which to vindicate federal rights, whereas diversity

jurisdiction provides a neutral forum for parties from different States." *Id.* (cleaned up). In line

with the statutory purpose of providing that neutral forum, diversity under section 1332 has been

interpreted to require that "*all* adverse parties to a litigation are completely diverse in their

citizenships." *Herrick Co. v. SCS Communs., Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) (emphasis

mine). As such, "[t]he presence in the action of a single plaintiff from the same State as a single

defendant deprives the district court of original jurisdiction over the entire action." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007) (quoting *Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546, 564 (2005)).

In the case at bar, section 1332 appears to afford the sole basis for the exercise of federal jurisdiction: Galea raises only state-law claims in the Second Amended Complaint, and although references to various federal statutes are scattered throughout her pleadings, she sets forth no facts in support of those claims, nor does she argue in her memorandum in opposition to the motion to dismiss that jurisdiction is proper under section 1331. Absent some allegations to suggest a plausible cause of action under any of those cited federal statutes, there is simply not a sufficient factual basis to support the exercise of federal question jurisdiction. *See, e.g., Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010) ("Whether federal courts have federal question jurisdiction over an action is typically governed by the well-pleaded complaint rule, pursuant to which federal question jurisdiction exists only if plaintiff's statement of his own cause of action shows that it is based on federal law.") (cleaned up); *see also Smulley v. Safeco Ins. Co.*, 2021 U.S. Dist. LEXIS 144740, at *14 (D. Conn. Aug. 3, 2021) (finding no basis for federal question jurisdiction where, "[a]lthough the complaint cites the Motor Vehicle Safety Act in passing as a basis for federal jurisdiction, it does not allege how any of the defendants violated the Motor Vehicle Safety Act or any federal cause of action that arises under the Motor Vehicle Safety Act."). Accordingly, I agree with the defendants that the propriety of jurisdiction depends on whether the parties are fully diverse.

As an initial matter, there is no dispute that Galea is domiciled in New York and that Silver Hill is a Connecticut facility. The defendants, however, contend that the parties are not completely diverse because Moore and Alliger, like Galea, are domiciled in New York. In

support of their motion, the defendants proffer affidavits in which both defendants aver that they were domiciled in New York at the time this action was initiated and that they remain so at press time. *See* Defs.' Ex. A, B. In reply, Galea, who, as the party invoking federal jurisdiction, bears the burden to demonstrate its propriety, argues that this Court has personal jurisdiction over both defendants. Although Galea may certainly be correct that the assertion of personal jurisdiction over those defendants is proper, that does not bear on the existence of subject matter jurisdiction, which is a separate question. *See United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.,* 110 F.3d 861, 864 (2d Cir. 1997) (explaining that "[s]ubject matter jurisdiction is concerned with the kinds of cases the federal district courts are empowered to decide" while "[p]ersonal jurisdiction…is concerned with the relationship of a given defendant to the particular geographic area in which a case is brought"). Moreover, given that the defendants have set forth affidavits that "reveal the existence of factual problems" with regard to jurisdiction, Galea cannot merely rely on the allegations in her pleadings, but must come forward with controverting evidence to demonstrate the propriety of subject matter jurisdiction. *Exchange National Bank of Chicago*, 544 F.2d at 1131. Because she has failed to do so, I am unable to find, on this record, that diversity jurisdiction exists.

Although the absence of jurisdiction generally requires wholesale dismissal of an action, federal courts have discretion to "salvage jurisdiction" by dismissing a non-diverse party (or "jurisdictional spoiler[]," *see SCS Communs., Inc. v. Herrick Co.,* 360 F.3d 329, 335 (2d Cir. 2004)), pursuant to Federal Rule of Civil Procedure 21.[3] *E.R. Squibb & Sons, Inc. v. Accident &*

---

[3] Galea, proceeding *pro se*, does not raise the possibility of dismissal of non-diverse parties to salvage jurisdiction. She does, however, strenuously object to dismissal of the action for lack of subject matter jurisdiction, and appears to believe that she *has* adequately demonstrated a basis for federal jurisdiction. Accordingly, I consider whether it is appropriate for me to exercise discretion under Rule 21 to drop the jurisdictional spoilers and allow the action to proceed. *See* Fed. R. Civ. P. Rule 21 ("On motion *or on its own*, the court may at any time, on just terms, add or drop a party.") (emphasis mine); *see also Kafaru v. Burrows*, 2008 U.S. Dist. LEXIS 1797, at *4 (D. Conn. Jan. 9, 2008) (dismissing, apparently *sua sponte*, non-diverse party); *Zaitzeff v. Ne. Transp., Inc.*, 2022 U.S. Dist. LEXIS

*Cas. Ins. Co.*, 160 F.3d 925, 935 (2d Cir. 1998); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered."); *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 390 (2d Cir. 2021) ("Even if complete diversity - and thus jurisdiction - is lacking at a case's inception, rather than dismiss the case as a nullity, the court may drop any dispensable parties that are obnoxious to its jurisdiction."); *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 573 (2004).

Although "district courts have broad discretion under Rule 21 to decide whether to sever any party from the action," dismissal in order to salvage jurisdiction is appropriate only where the jurisdictional spoiler is not an indispensable party. *Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, 2015 U.S. Dist. LEXIS 96957, at *11 (S.D.N.Y. July 24, 2015). Determining whether a particular party is indispensable such that dismissal is appropriate entails a fact-specific inquiry guided by the factors set forth in Federal Rule of Civil Procedure 19(b). *Zaitzeff v. Ne. Transp., Inc.*, 2022 U.S. Dist. LEXIS 12354, at *18 (S.D.N.Y. Jan. 24, 2022). Those factors include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b); *see also CP Solutions PTE, Ltd. v. GE*, 553 F.3d 156, 159 (2d Cir. 2009).

---

12354, at *17 (S.D.N.Y. Jan. 24, 2022) (considering, apparently *sua sponte*, whether dropping non-diverse party pursuant to Rule 21 was appropriate); *see also Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.,* 312 F.3d 82, 87 (2d Cir. 2002) ("'very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible'") (quoting *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987)).

In the case at bar, it appears from Galea's pleadings that neither Moore nor Alliger is an indispensable party, and that salvaging jurisdiction by dismissing both is appropriate. First, with respect to the potential for prejudice, dismissal is unlikely to negatively impact the interests of either Moore, Alliger, or the remaining parties to the action. *See Philippines v. Pimentel,* 553 U.S. 851, 869 (2008) (explaining that "Rule 19(b)'s first factor…directs consideration of prejudice both to absent persons and those who are parties"). In particular, the interests of Alliger and Moore are aligned with those of the remaining individual defendants, and Moore and Alliger additionally share counsel with those defendants. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 134 (2d Cir. 2013) ("prejudice to absent parties approaches the vanishing point when the remaining parties are represented by the same counsel, and when the absent and remaining parties' interests are aligned in all respects"). Moreover, dismissal is unlikely to have any impact on the remaining defendants' ability to defend against the claims set forth in the Second Amended Complaint, and even if those other defendants believe that Moore or Alliger contributed to "any liability they might incur in this case, they could seek to bring a claim" against Moore or Alliger. *Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 120 (S.D.N.Y. 2015) (quoting *CP Solutions*, 553 F.3d at 160). Finally, based on the allegations in the Second Amended Complaint, there is no indication that Galea's claims against Moore and Alliger are inextricably bound up with her claims against the other defendants. *See, e.g., Le Blanc v. Cleveland,* 248 F.3d 95, 98 (2d Cir. 2001); *cf. Zaitzeff v. Ne. Transp., Inc.*, 2022 U.S. Dist. LEXIS 12354, at *19 (S.D.N.Y. Jan. 24, 2022) (noting that where a non-diverse defendant played a "central role" in the events that gave rise to the plaintiff's claims, dismissal could prejudice the plaintiff).

With respect to the adequacy of a judgment rendered without those defendants, the question is whether Moore and Alliger's dismissal could result in piecemeal or duplicative

litigation. *CP Solutions*, 553 F.3d at 160 (noting that determining the adequacy of judgment requires a court to consider the "social interest in the efficient administration of justice and the avoidance of multiple litigation") (cleaned up); *see also Pimentel*, 553 U.S. at 870 ("adequacy refers to the public stake in settling disputes by wholes, whenever possible") (cleaned up). In the case at bar, the chances of duplicative litigation seem low. In particular, any claims that Galea might seek to raise against Moore or Alliger in state court, like those against the remaining individual defendants, are likely time-barred or not cognizable. More importantly, this case is nearly three years old, suggesting that dismissing the action and requiring Galea to start anew in state court would be particularly inefficient.  *See CP Solutions,* 553 F.3d at 160 ("it would be far more efficient to bring the case to final judgment in federal court than to send the parties to state court for a do-over")*; see also Newman-Green*, 490 U.S. at 838 ("[n]othing but a waste of time and resources would be engendered by…forcing these parties to begin anew").

Finally, although Galea may certainly be able to sue all defendants to this action in state court, "the bare fact that a state court forum is available does not, by itself, make it appropriate to dismiss the federal action." *Samaha v. Presbyterian Hosp. in City of N.Y.*, 757 F.2d 529, 531 (2d Cir. 1985) (per curiam); *see also CP Solutions,* 553 F.3d at 161 ("although [plaintiff] might be able to sue [defendant] together with the other defendants in state court, that consideration is far outweighed by the unfairness to [plaintiff] and the harm to judicial economy resulting from dismissal"); *Tutor Perini Bldg. Corp. v. N.Y.C. Reg'l Ctr., LLC*, 525 F. Supp. 3d 482, 499 (S.D.N.Y. 2021) (dismissing non-diverse defendants even where the case could theoretically "viably proceed in state court").

In sum, careful consideration of the Rule 19(b) factors as applied to the record in the case at bar makes clear that Moore and Alliger are not indispensable parties. Particularly in light of

the lengthy procedural history of this case, dismissing them from the action in order to salvage

diversity jurisdiction is therefore the appropriate course of action. Accordingly, those parties are

dismissed pursuant to Rule 21.

**B.       Statute of Limitations**

Turning next to the merits, the defendants argue that, to the extent Galea intends to bring

claims sounding in tort against the individual defendants, any such claims are time-barred. In

support of that argument, the defendants principally rely on my prior ruling addressed to Silver

Hill's motion to dismiss the Second Amended Complaint, where I held that Galea's tort claims

against Silver Hill were time-barred under Connecticut General Statutes sections 52-584 and 52-

577. *See* Doc. No. 56. In her memorandum in opposition to the motion to dismiss, Galea agrees

with the defendants that her claims sounding in tort are time-barred and identifies no basis for

tolling the statute of limitations. Accordingly, those claims are dismissed as time-barred.

**C.       Breach of Contract Claims**

Finally, the defendants contend that Galea has failed to set forth a cognizable claim for

breach of contract against any of the remaining individual defendants. More specifically, they

argue that, although Galea may have stated a cognizable claim for breach of contract against

Silver Hill, she has failed to identify the existence of an agreement with any individual employee

of the hospital. In response, Galea argues that "the instant [she] signed the Patient Handbook on

September 19, 2013" an implied contract with the individual hospital employees was formed.

Pl.'s Mem. Doc. No. 107. In support of that argument, Galea cites to the provision of the patient

handbook providing that "Silver Hill Hospital staff will not confirm or deny the presences of any

patient without the patient's written consent." SAC at ¶ 16. According to Galea, that provision

sufficiently demonstrates the existence of a contract not only between herself and Silver Hill, but

also demonstrates the existence of an implied contract between herself and each individual employee from whom she received care during her stay at Silver Hill.

As discussed in more detail in my prior order on Silver Hill's motion to dismiss, the elements of a breach of contract claim under Connecticut law are "formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.,* 311 Conn. 282, 291 (2014); *see also Am. Express Centurion Bank v. Head*, 115 Conn. App. 10, 15-16 (2009). Claims for breach of contract differ from those sounding in tort in that they are based on "'the breach of a duty arising out of a contract'" rather than "'a breach of duty imposed by law.'" *Meyers*, 311 Conn. at 291 (quoting *Gazo v. City of Stamford*, 255 Conn. 245, 263 (2001)). Said differently, an action for breach of contract is based on a party's alleged failure to comply with the terms to which he or she has agreed to be bound, rather than an alleged breach of duty or breach of care. Accordingly, "[t]he obligation of contracts is limited to the parties making them, and, ordinarily, only those who are parties to contracts are liable for their breach." *FCM Group, Inc. v. Miller*, 300 Conn. 774, 797 (2011) (cleaned up).

As an initial matter, Galea is certainly correct that she need not demonstrate the existence of an express agreement with the hospital employees in order to prevail on a breach of contract claim; Connecticut recognizes the validity of contracts implied in fact. *See Conn. Light & Power Co. v. Proctor*, 324 Conn. 245, 259 (2016). The issue with Galea's claims against the hospital employees, however, is not the lack of express agreement, but instead the absence of any factual allegations in the complaint suggesting that an agreement between the individual defendants and Galea existed at all. *See, e.g., Coelho v. Posi-Seal Int'l, Inc.,* 208 Conn. 106, 111-112 (1988) ("A

contract implied in fact, like an express contract, depends on actual agreement.") (cleaned up) (collecting cases).

More specifically, the fact that the agreement between Galea and Silver Hill allegedly provided that hospital employees would not disclose her private information without her consent does not suggest that each employee became a party to a contract with Galea, but rather that the hospital *itself* promised to take all reasonable measures to safeguard her private information, including from disclosure by its employees. *See, e.g., Doe v. Danbury Hosp.,* 2021 Conn. Super. LEXIS 8, at *11-12 (Super. Ct. Jan. 12, 2021) (finding a cognizable breach of contract claim against a hospital where plaintiff alleged that its employee wrongfully disclosed her confidential information). Moreover, Galea need not establish that the individual defendants are liable for breach of contract in order to prevail on her breach of contract claim against Silver Hill; the question with respect to that claim is not whether Silver Hill can be held vicariously liable for its employees' disclosures of confidential information, but instead whether Silver Hill itself breached the terms of its agreement with Galea. *See, e.g., Guy v. Providence Health & Servs. Wash.,* 502 P.3d 13, 19-20 (Alaska 2022) ("The test for vicarious liability, based on whether the agent was acting in the course and scope of employment, serves to determine whether it is fair to hold the employer liable for the employee's breach of the employee's duty. A contract claim, on the other hand, is based on the asserted breach of the principal's duty to satisfy obligations the principal has agreed to.").

In sum, the fact that Galea entered into an agreement with Silver Hill which allegedly provided that it would safeguard her confidential medical information from unauthorized disclosure does not imply the existence of a contract between Galea and each individual in its employ. As that provision is the sole basis on which Galea rests her breach of contract claim, she

has failed to plausibly allege the existence of an agreement between herself and the individual defendants and therefore has failed to plead a cognizable claim for breach of contract under Connecticut law. *See FCM Grp., Inc.*, 300 Conn. at 797 ("Parties to a contract cannot…impose any liability on one who, under its terms, is a stranger to the contract, and, in any event, in order to bind a third person contractually, an expression of assent by such person is necessary….a person who is not a party to a contract (i.e., is not named in the contract and has not executed it) is not bound by its terms.") (cleaned up). Accordingly, any claims for breach of contract against the individual defendants must be dismissed.

## V.    Conclusion

For the foregoing reasons, the motion to dismiss is **granted** with respect to the claims raised against Ackerman, Robinson, and McGeehan; and defendants Moore and Alliger are **dismissed** from the action pursuant to Rule 21.

So ordered.

Dated at Bridgeport, Connecticut, this 29th day of April 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge